IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEVON MORRIS,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 08-cv-3842 |
| | : | |
| **TROY LEVI, et al.,** | : | |
| Defendant | : | |

MEMORANDUM

**Stengel, J.**                                                                                                                                               **November 23, 2009**

Plaintiff Devon Morris suffers from hypertrophic cardiomyopathy, a possibly fatal heart condition. While incarcerated at the Federal Detention Center, Mr. Morris informed the prison medical personnel of a prior diagnosis of this condition and a prior recommendation he undergo surgery to implant an implantable cardioverter defibrillator ("ICD"). In addition, he repeatedly complained of chest pains, shortness of breath, and dizziness. Mr. Morris arrived at the FDC in February 2008, but did not see a cardiologist until August 2008, and did not undergo the recommended surgery until October 2008. Mr. Morris alleges the FDC's delay in providing treatment for his condition was a violation of his Eight Amendment rights. Defendant filed this motion to dismiss Mr. Morris's second amended complaint, or, in the alternate, a motion for summary judgment. For the reasons explained below, I will deny the motion.

**I. BACKGROUND**

Plaintiff Devon Morris was arrested on January 11, 2008 and was transferred to the

Federal Detention Center ("FDC") in Philadelphia, Pennsylvania on February 11, 2008. Second Amended Complaint at ¶ 16. When he arrived at the FDC, Mr. Morris informed an intake nurse he suffered a heart condition, chest pains, shortness of breath, dizziness, and fainting spells. Id. at ¶ 17. After the intake evaluation, his FDC file noted "enlarged heart and in need of pacemaker. History of fainting." Id. at ¶ 17.

On February 21, 2008, defendant Hussain Bokhari, a medically licensed practitioner at the FDC, examined Mr. Morris for an initial intake physical examination. Id. at ¶ 18. Mr. Morris told Mr. Bakhari he had been diagnosed with a serious heart condition at the Tucson Medical Center in Tucson, Arizona the previous October and the Tucson physician had informed him there was a significant risk of sudden cardiac death and recommended surgical implantation of an ICD. Id. at ¶ 19. Mr. Morris also explained he suffered from chest pains, shortness of breath, dizziness, and fainting spells. Id. Mr. Bokhari noted Mr. Morris had an abnormally high blood pressure. Id. at ¶ 18.

Mr. Bokhari informed defendant Dr. Odeida Dalmasi, Clinic Director at the FDC, of Mr. Morris's condition and prior diagnosis. Second Amended Complaint at ¶ 21. On March 20, 2008, Dr. Dalmasi administered an electrocardiogram ("EKG") test on Mr. Morris. Id. at ¶ 22. The EKG showed extreme abnormalities, and Dr. Dalmasi recommended the FDC provide Mr. Morris with an examination by a cardiologist. Id. at ¶ 23. The FDC provided Mr. Morris with a medical release form to allow it to obtain Mr.

Morris's records from the Tucson Medical Center.  Id.[1]

In late March 2008, the Tucson Medical Center sent Mr. Morris's medical records to the FDC.  Second Amended Complaint at ¶ 24.  These medical records confirmed Mr. Morris had been diagnosed with hypertrophic cardiomyopathy, and that the Tucson Medical Center had recommended surgical implantation of an ICD.  Id. at ¶ 25.

On May 2, 2008, Defendant Stephen Spaulding, the Health Services and Utilization Review Committee Coordinator at the FDC, and Dr. Dalmasi informed Mr. Morris the FDC "Utilization Review Committee"[2] had tabled his request to be evaluated by a cardiologist.  Id. at ¶ 26.  Mr. Morris "continued to live in fear of sudden death due to his untreated heart condition," and he continued to experience chest pains, dizziness, shortness of breath, and fainting.  Id. at ¶ 27.

On May 22, 2008, Mr. Morris's counsel from a different proceeding sent Dr. Dalmasi and Mr. Spaulding a copy of the medical records from the Tucson Medical Center, calling attention to the hypertrophic cardiomyopthy diagnosis and implantation

---

[1] Even though the FDC had been aware of the prior diagnosis before the EKG, this was the first time the FDC provided Mr. Morris with a medical release form.

[2] Defendants explained the Utilization Review Committee is a Health Services committee.  Memorandum of Law in Support of Defendants' Motion to Dismiss, or in the Alternate, for Summary Judgment at 3 n.1, Morris v. Levi, No. 08-3842 (E.D. Pa. filed Apr. 16, 2009) [hereinafter Defendants' Motion to Dismiss]. It is chaired by the Clinical Director, and includes the Health Services Administrator and the medical staff involved in the inmate's care. Id.  The Committee reviews various requests from inmates, including requests for specialist evaluations, and either approves the request, disapproves the request, or tables the request for further in-house evaluation.  Id.

recommendation.  Id. at ¶ 28.  On June 2, 2008, Sadie Carney, a certified physician's assistant at the FDC, examined Mr. Morris.  Second Amended Complaint at ¶ 29.  He again complained of chest pain, shortness of breath, and fainting spells, and referenced his prior diagnosis.  Id.  Ms. Carney, however, merely ordered an increase in Mr. Morris's blood pressure medication.  Id.  Dr. Askok Patel, a medical doctor at the FDC, cosigned Ms. Carney's "Clinical Encounter" report for Mr. Morris's visit.

On June 5, 2008, Mr. Morris submitted an urgent administrative request to defendant Troy Levi, warden at the FDC, requesting the recommended heart surgery.  Second Amended Complaint at ¶ 31.

On August 21, 2008, six months following his arrival at the FDC, Mr. Morris was evaluated by Dr. Daniel J. Vile, a cardiologist in private practice.  In an August 22, 2008 letter to the FDC "Medical Director," Dr. Vile warned Mr. Morris "could be at high risk for sudden cardiac death."  Id. at 33.  Dr. Vile recommended Mr. Morris be treated by an electrophysiologist for possible surgical implantation of an ICD.  Id. at 34.

On August 28, 2008, after defendants had not acted on Dr. Vile's recommendations, Mr. Morris filed a request for administrative relief to Warden Levi.  Id. at ¶ 35.  On or about September 2, 2008, defendant Antonio Fausto, a medically licensed practitioner at the FDC, examined Mr. Morris for chest pains, shortness of breath, dizziness, and fainting spells.  Second Amended Complaint at ¶ 36.

For 40 days following Dr. Vile's recommendations, defendants took no action.  Id.

4

at ¶ 37.  On October 22, 2008, Mr. Morris underwent surgical implantation of an ICD.  Id. at ¶ 38.  Following this surgery, defendants failed to provide plaintiff the proper care.  Id. at ¶ 39.

**II.     MOTION TO DISMISS STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern

Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

### III.    THE EIGHTH AMENDMENT CLAIM

Mr. Morris alleges an Eight Amendment denial of adequate medical care claim against defendants in their individual capacities. He alleges he had a serious medical need, i.e., a documented diagnosis of hypertrophic cardiomyopathy, a potentially fatal genetic heart disease. Second Amended Complaint at ¶ 43. He maintains Mr. Spaulding, Dr. Dalmasi, Dr. Patel, Mr. Bokhari, Mr. Fausto, and Ms. Carney were deliberately indifferent to his serious medical need because they knew of his condition but delayed treatment by a cardiologist and delayed the surgical placement of an ICD. Id. at ¶ 44. Mr. Morris maintains Warden Levi was deliberately indifferent to Mr. Morris's serious medical need because he knew the FDC medical staff was not treating Mr. Morris's hypertrophic cardiomyopathy and improperly denied Mr. Morris's requests for heart surgery. Id. at ¶ 45. Mr. Morris alleges the defendants' deliberate indifference caused him harm because he did not receive the necessary surgery for more than eight months following his admission to the FDC, and during those eight months he suffered physical

pain and lived in fear of death. Id. at ¶ 46.

To state an Eight Amendment inadequate treatment claim, a plaintiff must state (1) he has a serious medical need, and (2) the defendants were deliberately indifferent to that need. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Monmouth Co. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1986). The defendants do not dispute Mr. Morris was suffering from a serious medical need. See Defendants' Memorandum of Law at 10. They maintain Mr. Morris failed to sufficiently plead the defendants were deliberately indifferent to that need.

Deliberate indifference "requires obduracy and wantonness which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999) (internal citations omitted). The deliberate indifference standard is a subjective standard, Farmer v. Brennan, 511 U.S. 825, 837 (1994), and whether a defendant has the requisite level of knowledge is a question of fact, id. at 842.

"[C]onsiderable latitude" is afforded "to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." Inmates of Allegheny Co. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Medical malpractice and negligence do not establish the defendants are deliberately indifferent. Estelle, 429 U.S. at 106. Similarly, mere disagreement about the proper medical treatment will not support an Eight Amendment claim. Monmouth Co. Corr. Inst. Inmates, 834 F.2d at 346. However,

deliberate indifference may be established where prison officials "deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" Id. (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)). In addition, deliberate indifference is demonstrated where "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Id. (quoting Inmates of Allegheny Co. Jail, 612 F.2d at 762).

Mr. Morris does not allege a mere disagreement of diagnosis or treatment. Rather, he alleges he was not provided treatment. Although he was examined by doctors and prescribed high blood pressure medication, the FDC did not permit him to be examined by a cardiologist until August 2008, six months after his incarceration. The Tucson Medical Center and Dr. Dalmasi both recommended Mr. Morris be permitted to visit a cardiologist. In addition, after Mr. Morris was examined by a cardiologist, the cardiologist concurred with the prior recommendation that an implantation of an ICD be considered. This surgery did not occur until October 2008.

I find Mr. Morris alleged sufficient facts to survive a motion to dismiss. He alleged each defendant knew of his serious medical need and each was deliberately indifferent to the need because the required medical treatment was delayed. See Second Amended Complaint at 43-46. The complaint contains sufficient factual matters to suggest the required elements of the claim and "raise a reasonable expectation that

discovery will reveal evidence of" those elements. See Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. At 556).

IV. **QUALIFIED IMMUNITY**

Qualified Immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts apply a two-step inquiry to determine whether a defendant is entitled to qualified immunity. First, a court must determine whether a constitutional right was violated. Second, a court must determine whether the right was clearly established such that a reasonable officer would have known the "conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-02 (2001) (overruled on other grounds). To be "clearly established," the contours of the right must be sufficiently clear that a reasonable officer would understand his conduct violates the right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).[3]

Mr. Morris's complaint sufficiently pled a constitutional right had been violated. See Part III. In addition, the complaint states sufficient facts to establish that the

---

[3] Defendants maintain failing to grant defendants qualified immunity "would undermine the ability of prison medical staff to exercise their discretion and make medical judgments in managing medical care for large prison populations." It would have a "chilling effect on the recruitment and retention of competent medical professionals for federal prison medical departments." Defendants' Memorandum of Law at 18.

constitutional right exists and that a reasonable person would understand his actions violated the right. The Tucson Medical Center and Dr. Dalmasi recommended Mr. Morris be seen by a cardiologist. After Mr. Morris was finally examined by a cardiologist, this cardiologist joined in the recommendation from the Tucson Medical Center that an ICD be implanted. This surgery did not occur for another two months.

I find the complaint sufficiently pled the constitutional right was clearly established and, taking the Mr. Morris's allegations as true, a reasonable person would have known they were violating the defendant's right. Therefore, I will deny the defendants' qualified immunity request at this stage.

## V.   SUMMARY JUDGMENT

Defendants maintain, if their motion to dismiss is denied, the court should consider materials outside the pleadings, grant defendants' motion for summary judgment, and enter judgment in favor of defendants under Rule 56(c). Defendants attached medical records in support of this motion.

Mr. Morris argues defendants' summary judgment motion is premature. Mr. Morris argues the motion should be denied pursuant to Federal Rule of Civil Procedure 56(f), which provides "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained,

depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Mr. Morris claims he cannot present facts essential to justifying his opposition to the moiton without discovery, and, therefore, the motion should be denied pursuant to Federal Rule of Civil Procedure 56(f).

Mr. Morris's attorney, James Berger, Esquire filed a affidavit in support of this claim.[4] Mr. Berger maintained evidence concerning the state of mind and motivations of defendants regarding "their acts or omissions relating to the denial and delay in obtaining medical care for Mr. Morris is not otherwise available to him without further discovery." Affidavit of James Berger at ¶ 9. He maintains no discovery has occurred, and Mr. Morris must be afforded the opportunity to take discovery "including but not limited to, taking depositions of Defendants and other fact witnesses and serving interrogatories, to respond to Defendants' factual assertion that Defendants were not deliberately indifferent to Mr. Morris's alleged injury, and to demonstrate that there is a genuine issue of material fact." Id. at ¶ 10. In addition, Mr. Berger maintains Mr. Morris should be afforded the opportunity to "obtain paper discovery, including but not limited to, his full set of medical and administrative records; the proper procedures related to inmate Health Services at the [FDC]; and documentation relating to the decision of the Utilization Review Committee to table the request for Mr. Morris to obtain necessary cardiology consultation." Id. at ¶

---

[4] Mr. Berger was terminated from this case on August 6, 2009. However, at the time Mr. Morris's opposition to Defendants' motion was filed, Mr. Berger was counsel of record. Although Mr. Berger is no longer an attorney of record for this case, Mr. Morris is represented by counsel.

11

11.

Because discovery has not yet commenced, I will deny Defendants' motion for summary judgment and allow Mr. Morris to conduct discovery on his claim.

An appropriate order follows.